UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HIFIS EDGARDO CABALLERO-MURILLO,

    Petitioner,

v.

    Case No. 2:26-cv-45-KCD-DNF

IMMIGRATION AND CUSTOMS ENFORCEMENT, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. ATTORNEY GENERAL, WARDEN MATTHEW MORDANT, WARDEN OF SOUTH FLORIDA DETENTION CENTER;

    Respondents.
_____/

## ORDER

Petitioner Hifis Edgardo Caballero-Murillo is currently detained by immigration authorities at Alligator Alcatraz. He has filed a habeas corpus petition (Doc. 1) and now seeks a temporary restraining order commanding his immediate release (Doc. 2). He argues that his detention is unlawful because the government failed to follow its own procedures for revoking his supervised release, and because his removal is not reasonably foreseeable. (Doc. 1 at 11-13.)[1]

---

[1] Petitioner's filings are not paginated. So for ease of reference, the Court will cite the page numbers generated by its electronic filing system.

A temporary restraining order is a drastic remedy. It requires a court to act on incomplete information, often before the other side has had an opportunity to appear. Because Petitioner has not made the clear showing required to justify such a step, his motion is **DENIED**.

## I. Legal Standard

To obtain a temporary restraining order (TRO), the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Immediate injunctive relief is an "extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016).

## II. Discussion

Petitioner's arguments for immediate release face significant hurdles. He makes two primary claims, neither of which justifies emergency intervention.

First, Petitioner argues that Respondents are holding him with no end in sight in violation of the Due Process Clause. (Doc. 8 at 2.) Under the

Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the government cannot detain a non-citizen indefinitely just because they have been ordered removed. If removal is not "reasonably foreseeable," the detention must generally end. *Id.* at 699.

But *Zadvydas* also establishes a presumptively reasonable detention period of six months. *Id.* at 701. Petitioner was detained just last month. As of today, he has been in custody for less than three weeks. To succeed on a *Zadvydas* claim this early, a petitioner must show that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* Petitioner points out that he has an Order Withholding Removal from 2022, but that does not mean removal is impossible; it only restricts removal to a specific country (Honduras). The government is generally entitled to time to explore alternatives. We are simply too early in the timeline to say the Petitioner has a substantial likelihood of success on this claim.

Second, Petitioner argues that Respondents violated his due process rights by revoking his immigration supervision without the interview or paperwork required under 8 C.F.R. § 241.4. (Doc. 2 at 11.) This is a serious allegation. Agencies must follow their own rules. *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). But in the context of a TRO—where the Court has heard only one side of the story—we must be cautious. Petitioner asserts that no interview occurred, and he was not given notice of the reasons for revocation.

3

(Doc. 2 at 11.) The government has not yet had a chance to respond. It may be that an interview was attempted, or the notice process is underway. And even if these violations occurred, the typical remedy for a procedural defect is to order the agency to provide the process that was due, not necessarily to order immediate release. *See Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 67 (2009). The leap from "I didn't get my interview or notice" to "I must be released immediately" is too far for a TRO to bridge on an *ex parte* basis.

One last ancillary issue. The TRO also seeks an order prohibiting Petitioner's transfer outside the Middle District of Florida. This will, according to Petitioner, prevent the Court from losing jurisdiction over the habeas petition. (Doc. 2 at 14.) Such relief is unnecessary. "[J]urisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian." *Villa v. Normand*, No. 5:25-CV-89, 2025 WL 3113200, at *4 (S.D. Ga. Oct. 16, 2025).[2]

### III. Conclusion

The denial of a TRO is not a denial of the case. It is simply a recognition that the Court needs to hear from both sides before altering the

---

[2] The Court does not read Petitioner's TRO as also requesting an order prohibiting his removal from the United States. To the extent such relief is contemplated, however, the Court is without authority to grant it. *See Rodriguez v. Acting Director of Immigr.*, No. 2:26-CV-2-KCD-DNF, 2026 WL 83972, at *1 (M.D. Fla. Jan. 12, 2026).

4

status quo. The claims raised by Petitioner—particularly regarding the alleged failure of ICE to follow its revocation regulations—are serious and require a prompt answer. But they do not justify an *ex parte* order of release.

**ORDERED** in Fort Myers, Florida on January 14, 2026.

Kyle C. Dudek
United States District Judge